IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAILYNN CLARK,                                    CIVIL DIVISION

               Plaintiff,                          Case No.    2:23-cv-83

       v.

KEYSOURCE EDUCATIONAL STAFFING,
LLC and KISKI AREA SCHOOL DISTRICT,

           Defendants.

## COMPLAINT AND JURY DEMAND

A.    ***Preliminary Statement***

1.    The plaintiff Shailynn Clark brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of her right to be free from employment discrimination based upon her disability.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.    ***Jurisdiction***

2.    The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.    On or about June 30, 2022, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2022-02110.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.    The EEOC issued a Notice of Right to Sue dated January 3, 2023.

5.      The plaintiff filed this complaint within 90 days of receipt of the Notice of Right to Sue.

C.    ***The parties***

6.      The plaintiff is an adult individual who resides in Vandergrift, PA (Westmoreland County).

7.      The defendant KeySource Educational Staffing, LLC ("KeySource") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.  The defendant has a place of business located at 449 Seybertown Rd, East Brady, PA 16028 (Westmoreland County).

8.      The defendant Kiski Area School District ("Kiski") is a suburban/rural school district located in Westmoreland County, Pennsylvania.

9.      At all times material, each of the defendants employed more than fifteen employees.

10.      The defendants were the plaintiff's employer and are employers within the meaning of the ADA, 42 U.S.C. § 12111(5).

D.    ***Factual Background***

11.      The plaintiff was employed by KeySource, a company that provides student aides to public schools for children with learning disabilities.  The plaintiff was hired on January 1, 2022.

12.      KeySource assigned the plaintiff to work at various schools within Kiski.  She was working at Kiski High School at the time of her termination on April 28, 2022.

13.      The plaintiff was employed as a Student Aide.

2

14.     The plaintiff's duties included keeping the children on task during classes and to help with their homework.  She typically worked Mondays through Fridays, 7:00 am through 2:45 pm.

15.     At all times relevant, the plaintiff was supervised by and reported to management staff of both KeySource and Kiski.  These individuals had supervisory control over the plaintiff and assigned her tasks on a daily basis.

16.     Further, both KeySource and Kiski reserved the ability to terminate the plaintiff's "employment" for any reason.

17.     Although KeySource paid the plaintiff for the hours she worked at Kiski, Kiski shared responsibility for the wages paid to "temporary" employees, including the plaintiff. Specifically, Kiski paid KeySource for each hour worked by each temporary employee, including the plaintiff, and was required to pay overtime charges as applicable for hours worked in excess of 40 each week according to law.  Finally, Kiski was required to comply with all applicable federal, state and local laws and regulations concerning employment, including, but not limited to wage and hour, breaks and meal period regulations.

18.     At all times relevant, the plaintiff was employed by both KeySource and Kiski and both were the plaintiff's employer.

19.     The plaintiff has disabilities as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability.  Specifically, she has psoriatic arthritis, which is a long-term inflammatory arthritis, characterized by painful swelling in the joints, hands and fingers.  This disability is a physical impairment that substantially limit one or more of the major life activities of the plaintiff.

20.     During her employment the plaintiff was able to perform all of the essential functions of her job either with no accommodations or with reasonable accommodations. The only accommodation she required was to take time off of work on a periodic basis to attend doctor's appointments or to undergo iron transfusions when her symptoms flared up.

21.     Throughout her employment, the plaintiff was considered to be a hard-working, and competent employee.

22.     The plaintiff advised KeySource's management about her disability at the time she was hired. Specifically, she advised Matt Erickson, Human Resources, about her disability. She told him that she would need to attend doctors' appointments (she was being treated by multiple doctors at different medical providers for her disability) and that she would have to take either half-days of full-days off from time to time. At all times relevant during her employment, KeySource management was aware of the plaintiff's disabilities.

23.     Further, the plaintiff advised Dr. Chad Roland, Kiski High School Principal, about her disability and explained to him that it was hard for her to go up and down stairs in the school. She requested permission to have access to the key that operated the elevator so that she could move between floors as needed.

24.     Roland would not make the key available for the plaintiff, and she had to ask for it on repeated occasions during her first week of employment. Roland seemed dismissive of the plaintiff's request. Finally, the plaintiff spoke to Anthony Gonnella, Assistant Principal, about her problem with getting a key to use the elevator. He made the elevator key available for the plaintiff's use.

25.     The plaintiff was not provided with the attendance policy of KeySource at the outset of her employment and did not receive it until shortly before her termination.

4

26.     On January 27, 2022, the plaintiff sent a text message to Erickson advising him that she had a doctor's appointment on February 3, 2022 (at the AHN Cancer Institute at Allegheny Valley Hospital).

27.     On February 15, 2022, the plaintiff sent a text message to Erickson advising him that she had another doctor's appointment on February 23 at 11:30 am (at AHN Rheumatology in Greensburg).  She also requested guidance on how she should request time off in the future.

28.     On March 7, 2022, the plaintiff had an appointment at AHN Rheumatology in Greensburg at 11:00 am.  She had an extreme allergic reaction to her medication and advised Erickson, via text message, that she would not be able to go to work that day.

29.     On March 17, 2022, the plaintiff sent an email regarding upcoming medical appointments.  Specifically, she requested time off on March 18, 21, 22, 23, 28 and 31 and April 22.  These appointments were for iron transfusions; she was very anemic, one of the sequalae of her disability.   Neither KeySource nor Kiski voiced any objections or issues with this requested time off.  Further, she was not warned that taking these days off would incur discipline for attendance.

30.     On March 28, 2022, the plaintiff learned, for the first time, that there were issues with her job.  Dr. Richael Anderson, Director of Student Support Services, told the plaintiff that she was dressing too casually for work.  The plaintiff explained that she had problems with fastening buttons on articles of clothing due to her disability and that she tried to wear clothes that did not have buttons.

31.     On April 13, 2022, Anderson sent the plaintiff the following email:

*Matt [Erickson] and I have reviewed your attendance.  You have missed 7 days, left early 5 days and only worked a half day 1 time.*

*This is not acceptable based on the needs we are required in order to meet the needs and provide service to the students in the district. This email serves another step in the discipline process. If you miss any more days or leave early, we will terminate.*

*As offered already, we would be happy to put on the sub list. That way, you can choose to work on days if offered or turn the day down if you are not feeling good or have appointments.*

*If you would like a meeting to discuss this, please let me know. I will send a formal letter soon for your records.*

32.    This was the first time that any issues with the plaintiff's attendance were brought to her attention.

33.    Anderson did not send the "formal letter" as referenced in the above email.

34.    The plaintiff had not missed any days after March 31 and had cancelled all her doctors' appointments, including a surgical procedure relating to her disability, in an effort to alleviate KeySource's and Kiski's issues with her attendance. She wanted to keep her job.

35.    Concerned about the April 13 disciplinary email, the plaintiff called Erickson on April 19, 2022 to get information regarding the attendance policy. He did not pick up the call, so she sent him a text message at 10:32 am:

*I would like an agreement under my disability in writing for how many days I can report off work and how many half days I can have for the* [sic] *all of the next school year in August. Because I don't want to run into this situation again.*

36.    At 3:38 pm the same day, Erickson responded by text:

*Good afternoon, sorry I missed your call. Our terms and conditions are outlined in the collective bargaining agreement. You would have the same amount of days off as all other employees.*

37.    The plaintiff was finally able to get the information regarding attendance policies shortly before her termination.

38.     On April 27, 2022, the plaintiff was called into a Zoom meeting by Anderson. Although both Anderson and the plaintiff were in the facility at the time, Anderson did not want to meet in person.  The plaintiff asked for the union representative to be present since it was clear to her that this was a disciplinary meeting.  Anderson said that the union representative was "not available" and therefore would not be attending.

39.     Anderson reiterated the issues regarding the plaintiff's attendance, threatening her with termination if the plaintiff missed another day for any reason.  The plaintiff told Anderson that she had canceled all her upcoming appointments, including a surgical procedure, so that she would not miss any more work.  Anderson said, "we'll give you a day off for the surgery, but that is it; any further slip up will result in termination."  The plaintiff got upset because of the threatening nature of Anderson's tone.  She realized that KeySource would seize upon the first opportunity to terminate her employment.

40.     The plaintiff was distraught and crying as a result of the Zoom meeting with Anderson.  She headed to a teacher's classroom to get some personal belongings.  She encountered a student in the hallway who saw that she was crying and upset.  He asked her what was wrong.  She told the student, "I think I'm going to get fired because of my disability."

41.     About twenty minutes after this encounter, Anderson summoned her to a meeting with Roland, the principal, saying, "we need to speak to you."  They walked to Roland's office. He told the plaintiff that he had found out about the plaintiff's encounter with the student and said that was very inappropriate.  The plaintiff candidly agreed, and apologized.  She explained that she was distraught about the prospect of being fired because of her disability.  Roland brought up the plaintiff's request for the key to the elevator, obviously annoyed that she was

using the elevator instead of going up and down the steps.  The plaintiff again explained that she had difficulty climbing stairs because of her disability.

42.    Roland responded, "I don't think you have a disability; you don't look like you have a disability"; implying that the plaintiff wanted to use the elevator because she was lazy. He continued to talk down to her as if she were a child.

43.    Anderson said "due to your disability, you are unreliable.  We are not sure if you're going to show up or not."  The plaintiff again said that she had canceled her upcoming medical appointments to make sure that she did not miss another day before the end of the academic year.  Anderson said, "It doesn't matter, we are terminating your employment."

44.    Shortly after the termination meeting, the plaintiff had a telephone conversation with Erickson.  He said that she was unreliable because of her disability.

45.    The plaintiff was terminated because of her disability; any other reasons cited by KeySource and Kiski for her termination are and were nothing more than pretexts.

## FIRST CAUSE OF ACTION

46.    The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

47.    The plaintiff has a disability and thus is protected against discrimination under the ADA.

48.    The plaintiff was qualified for her position.

49.    At all times relevant, the defendants knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

50.    The plaintiff was able to perform her position with or without a reasonable accommodation.

8

51.     Despite her qualifications, the plaintiff was terminated.  The reasons given for her discharge were a pretext.

52.     The defendants' discharge of the plaintiff was because of her disability, in violation of the ADA.

53.     The defendants' violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

54.     The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

55.     As a direct and proximate cause of its actions, detailed above, the defendants have violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendants and that the defendants be required to provide all appropriate remedies under the ADA and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. I.D. No. 63306

220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated:  January 18, 2023